## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAHEEM JOHNSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-4738** |
| | : | |
| **GINA CLARK,** *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SCHMEHL, J. /s/JLS**                                                    **May 22, 2024**

Plaintiff Raheem Johnson, a convicted prisoner currently incarcerated at SCI Chester, filed a *pro se* Complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights at both SCI Chester and SCI Camp Hill.[1]  Johnson brings claims against the Pennsylvania Department of Corrections ("DOC"); the Secretary of the DOC, Laurel Harry; certain SCI Chester employees (Facilities Manager Gina Clark, Culinary Department Supervisor Cotton-Williams, Deputy Superintendent of Centralized Services Keith Miller, Mailroom Supervisor Tameka Davis, and "CFSM"[2] M. Reasons); and certain SCI Camp Hill employees (Correctional Officer ("CO") Boose; Captain Baptist; and Grievance Coordinator Heist.  (Compl. at 2-3.)  Johnson asserts individual and official capacity claims against all Defendants.  (*Id.*)  For the following reasons, the Court will sever Johnson's claims against the DOC and SCI Chester employees, which are based on allegations related to Johnson's restricted GERD diet, from his claims against SCI Camp Hill employees, which are based on the alleged confiscation of Johnson's

---

[1]        Also pending is Johnson's Motion to Move Forward (ECF No. 6).  Johnson's Motion will be denied as moot in light of the filing of this Memorandum an accompanying Order.

[2]        The Court understands this acronym to stand for "Corrections Food Service Manager."

legal papers.  The SCI Camp Hill claims will be transferred to the U.S. District Court for the Middle District of Pennsylvania.  Of the SCI Chester claims remaining before this Court, the following will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii):  claims for money damages based on the Pennsylvania Constitution, claims based on the outcome of Johnson's grievances, Rehabilitation Act claims asserted against the individual Defendants, and Johnson's official capacity claims and claims against the DOC seeking money damages. The Court will dismiss without prejudice Johnson's conditions of confinement claims based on being served contaminated food, his retaliation claims, any supervisory liability claims he seeks to pursue against Defendants Clark and Miller, his claims against Secretary Harry,[3] and his Rehabilitation Act claim against the DOC.  The Court is prepared to serve Johnson's conditions of confinement claim based on the alleged non-delivery of his restricted diet against Defendants Cotton-Williams and Reasons.  Johnson will be afforded the option of proceeding with those claims only or filing an amended complaint.

## I.    FACTUAL ALLEGATIONS[4]

The focus of Johnson's Complaint is twofold.  First, he alleges that he was not served his duly authorized restricted diet meal on numerous occasions, and after he complained and filed grievances about the missing meals, he was retaliated against by members of the SCI Chester culinary staff, who he alleges served him contaminated food.  Second, he alleges that when he was

---

[3]    There are no factual allegations in the Complaint describing any conduct engaged in by Harry.  Any claim against her is, therefore, not plausible.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.)

[4]    The allegations set forth in this Memorandum are taken from Johnson's Complaint.  (ECF No. 1.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

transferred to SCI Camp Hill for three days in March 2023, some of his legal paperwork was confiscated by SCI Camp Hill personnel, allegedly in retaliation for Johnson's prior civil lawsuits against the DOC. Johnson alleges that he pursued the grievance process to redress these alleged violations of his rights.

### A.      Allegations Related to Contaminated Food and Denial of Restricted Diet

Johnson alleges that he was transferred from SCI Camp Hill to SCI Chester on March 19, 2019. (Compl. at 2.) He alleges he was granted permission to follow a GERD[5] diet to address symptoms including chest pain, heart burn, and indigestion. (*Id*. at 4.) In November of 2021, meals consistent with Johnson's restricted diet were not delivered for "several days,"[6] and Johnson requested that non-defendant CO Plummer call Defendant Culinary Department Supervisor Cotton-Williams and request delivery of his restricted meals. (*Id*.) When, after several days of calls, Cotton-Williams finally sent the meal labelled with Johnson's name to his unit, Johnson allegedly found chewed gum in the meal. (*Id*.) He reported this to CO Plummer, who requested a replacement meal. Cotton-Williams allegedly agreed to send the replacement. (*Id*.) Johnson attributes the contaminated food to retaliation by Cotton-Williams because Johnson complained about not receiving his restricted meals and asked COs to call and request the meals. (*Id*. at 5.) Johnson filed a grievance based on receiving contaminated food. His grievance was upheld but he was denied money damages. Defendant Clark denied Johnson's appeal, finding his claim of retaliation to be unsubstantiated. (*Id*. at 4-6.)

---

[5]      "GERD" is an acronym for gastroesophageal reflux disease.

[6]      Johnson attributes the alleged denial of his restricted meals to retaliation based on his efforts to assist other prisoners to write complaints based on the delivery of cold food during the COVID lockdown. (*Id*. at 4.)

In January 2022, Johnson filed another grievance when he allegedly did not receive a meal consistent with his restricted diet for six days. (*Id*. at 6.) His grievance was upheld on the ground that he was entitled to receive the restricted diet and that the culinary department was aware of the requirement. (*Id*.) In June 2023, Johnson filed a further grievance when he allegedly did not receive his restricted diet from June 1, 2023 through June 12, 2023, a period of more than ten days. (*Id*. at 7.) The grievance was denied as unsubstantiated. The response noted that Defendant Reasons was informed of Johnson's restricted diet on June 9, 2023, and that there was no documentation supporting Johnson's claim that he did not receive it thereafter. (*Id*. at 8.) Johnson alleges that on June 19, 2023, one week after filing his grievance, he was served his restricted diet at lunch and that there was a hair in it. (*Id*. at 9.) He filed another grievance, claiming that the hair was deliberately placed in his meal by kitchen staff in retaliation for his earlier grievance. (*Id*. at 9.) The grievance was denied because, although several witnesses saw the hair in Johnson's meal, there was no evidence that it came from the kitchen. (*Id*. at 9-11.) Johnson alleges that on August 21, 2023, he was served his restricted diet and a ladybug had been placed in his meal. (*Id*. at 10.) He then filed a grievance about the contaminated meal, which was denied because there was no way to know who placed the bug in the meal. (*Id*. at 11.) Defendant Clark specifically denied Johnson's claim that the kitchen staff were retaliating against him by serving him contaminated food. (*Id*. at 12.)

In short, Johnson alleges that over a period of approximately 18 months, he was not served his restricted diet on approximately twenty days. Also, during that time, he was allegedly served contaminated food on three occasions. He claims that the conduct giving rise to these events was retaliation for filing grievances, and that it was done with deliberate indifference to his needs. (*Id*. at 23.) He alleges that the Defendants were aware of and disregarded the danger associated with failing to serve him his restricted diet "for weeks." (*Id*. at 23-24.) He further alleges that as a

result of the allegedly retaliatory contamination of his meals on three occasions, he no longer trusts his restricted diet trays and has either gone without eating or resorted to eating foods from the commissary, spending his own money to do so. (*Id*. at 24.) Johnson also alleges that the events described have triggered his PTSD. (*Id*.)

**B.    Allegations Related to Confiscation of Legal Papers**

Johnson alleges he was transferred from SCI Chester to SCI Camp Hill on February 21, 2023, and remained there until February 23, 2023, when he was transferred back to SCI Chester. (*Id*. at 13.) While at SCI Camp Hill, Johnson alleges that Defendant CO Boose commented that Johnson liked suing the DOC. Johnson responded that he only sued when his rights were being violated, and Boose allegedly replied that Johnson was at Camp Hill, where he had no rights. (*Id*.) Boose stated he was confiscating Johnson's legal papers, commenting that Johnson would not be able to sue anyone else for some time. (*Id*.) Johnson filed a grievance about the confiscation of his legal papers and was advised in response that all inmates' legal papers were confiscated upon their return from court and tested for contraband, and that three of his pages had tested positive. (*Id*.) The response also noted that Johnson had received a confiscation slip and that his paperwork had been returned to him prior to his return to SCI Chester, but Johnson alleges this was not true. (*Id*. at 13-14.) Johnson appealed the initial grievance response, but his later efforts to utilize the process were unsuccessful as his appeal was untimely filed. (*Id*. at 14.)

Johnson alleges that on March 23, 2023, non-Defendant CO Brown called him to the property department, where he told Johnson to sign for the delivery of his legal paperwork from SCI Camp Hill. (*Id*. at 15-16.) Johnson initially refused to sign for the material because the file was very small, but upon being threatened with a misconduct or transfer to the Restricted Housing Unit, he accepted the paperwork. (*Id*. at 16.) Johnson alleges he filed a grievance with SCI Camp Hill seeking the return of all of his paperwork, but that SCI Camp Hill Grievance Coordinator

Heist rejected it on timeliness grounds and because Johnson did not supply the required documentation to substantiate his claims. (*Id*. at 17.) Johnson also filed a grievance at SCI Chester claiming that Defendant Davis opened his legal mail outside of his presence and then allowed CO Brown to return the paperwork, which was missing items, to Johnson. (*Id*. at 19.) In response to his grievance, Johnson was told to direct his grievance to SCI Camp Hill as the facility that confiscated his paperwork and returned his paperwork with items missing.[7] (*Id*. at 20, 21, 22.)

Based on the foregoing, Johnson asserts First Amendment claims for retaliation and denial of access to the courts, Fourth Amendment claims for confiscation of personal property, Eighth Amendment conditions of confinement claims, a claim under the Rehabilitation Act, 29 U.S.C. § 794(a), claims arising from his participation in the grievance process, claims pursuant to the Pennsylvania Constitution,[8] and state law claims for negligence, recklessness, and intentional

---

[7]    Attached to Johnson's Complaint is what appears to be a complete record of the grievances, appeals, and responses thereto referred to by Johnson in his Complaint. (*See* ECF No. 1-1.)

[8]    "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*). As there is no private right of action for damages under the Pennsylvania Constitution, these claims are dismissed as legally frivolous. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

However, Pennsylvania courts and the United States Court of Appeals for the Third Circuit have recognized that a plaintiff may maintain a successful cause of action directly under the provisions of the Pennsylvania Constitution for equitable remedies such as injunctive and declaratory relief. *See Pocono Mountain Charter Sch.*, 442 F. App'x at 688 (citing *Moeller v. Bradford Cnty.*, 444 F. Supp. 2d 316, 320–21 (M.D. Pa. 2006) ("[I]t is well settled that individual plaintiffs may bring suit for injunctive relief under the Pennsylvania Constitution") and *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Cmmw. Ct. 2006) ("[O]ther remedies, such as declaratory or injunctive relief . . . are . . . remedies under the Pennsylvania Constitution.")). Johnson requests prospective relief in the form of an order requiring the defendants to provide him with his restricted diet and to return his legal materials. (Compl. at 25.) He may pursue this relief in a claim asserted under the Pennsylvania Constitution.

infliction of emotional distress.  (*Id*. at 1-2, 23-24.)  Johnson seeks money damages and injunctive

relief in the form of an order requiring the defendants to provide him with his restricted diet and

to return his legal materials.  (*Id*. at 25.)  Johnson also seeks an order prohibiting retaliatory transfer

from unit to unit within his current facility, and transfer to another facility far from his family.[9]

(*Id*. at 26.)

## II.    SEVERANCE OF CLAIMS

Johnson raises two distinct claims in his Complaint:  first, a claim asserted against SCI

Chester personnel based on the alleged denial on several occasions of his restricted GERD diet

and three instances of his receipt of contaminated food, and second, a claim asserted against SCI

Camp Hill personnel based on the alleged confiscation of several of his legal papers while he was

briefly at that facility.  The Court will sever the claims asserted against the SCI Chester Defendants

from the claims asserted against the SCI Camp Hill Defendants so that they may proceed in

separate lawsuits.

The Federal Rules of Civil Procedure provide that "[a] party asserting a claim, . . . may

join, as independent or alternative claims, as many claims as it has against an opposing party."

Fed. R. Civ. P. 18(a).  They likewise allow a plaintiff to join multiple defendants in one action if:

(a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and

(b) "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ.

P. 20.  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the

---

[9]     It is well-settled that prisoners have no inherent constitutional right to placement in any
particular prison, to any particular security classification, or to any particular housing assignment.
*See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give
rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v.
Tavares*, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same).  This request will be denied.

broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).  "But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *Pew v. Little*, 2024 WL 967823, at *2 (E.D. Pa. March 6, 2024 (citing *McKinney v. Prosecutor's Office*, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted).  "'Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.'" *Gorrio v. Terra*, 2023 WL 8373167, at *6 (E.D. Pa. Dec. 4, 2023) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).  Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15.  To remedy a misjoinder, a Court may add or drop a party or sever any claims.  Fed. R. Civ. P. 21.  Rule 21 "give[s] district courts broad discretion in deciding whether to sever a case by way of severing parties or claims." *Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 467 (E.D. Pa. 2013).

Johnson has asserted claims based on two separate and distinct series of events that occurred at two separate prisons.  The claims do not belong in a single lawsuit.  *See Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (*per curiam*) ("Misjoinder of claims occurs when, among other things, the events that give rise to the plaintiff's claims do not stem from the same transaction."); *see also Roudabush v. United States*, 2011 WL 13225005, at *6 (D.N.J. July 14, 2011) ("Here, the claims arising out of the state court trial appear to be completely unrelated, factually and legally, from the claims arising out of conditions at the jail."); *Saulberry v. Atl. Cnty. Jail*, 2010 WL 3825701, at *6 (D.N.J. Sept. 24, 2010) (severing claims where "the claims arising out of the arrests are completely unrelated, factually and legally, from the claims arising out of conditions at the jail").  Accordingly, the Court will exercise its discretion under Rule 21 and sever

Johnson's claims against SCI Camp Hill personnel into a separate lawsuit, which will be transferred to the United States District Court for the Middle District of Pennsylvania.[10]  The Court will address Johnson's remaining allegations based on events that occurred at SCI Chester.

## III.    STANDARD OF REVIEW

Although Johnson has paid the filing fee in full, the Court has the authority to screen his Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

---

[10]      There is no apparent basis for venue in this district those claims based on events that occurred at SCI Camp Hill, which is located in Cumberland County in the Middle District of Pennsylvania.  Therefore, the Court will direct the Clerk of Court to transfer the severed claims to that District, where the events giving rise to Johnson's claims occurred and where the majority of the Defendants are located.  *See* 28 U.S.C. §§ 118(b), 1391(b) & 1406(a); *Lafferty v. St. Riel*, 495 F.3d 72, 74-75 & n.3 (3d Cir. 2007) (declining to disturb district court's *sua sponte* transfer under § 1406(a)); *Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006) (district court may *sua sponte* transfer case under § 1406(a)).  The Court will also sever and transfer Johnson's claims against SCI Chester mailroom Supervisor Tameka Davis, because the factual allegations in the Complaint make clear that the claims are related to Johnson's confiscated legal papers, and not to his restricted diet.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Johnson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## IV.   DISCUSSION

Johnson asserts claims for violation of his First and Eighth Amendment rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode* 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A.      Claims Against the DOC and Official Capacity Claims

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits for money damages filed in federal court.

However, Johnson may pursue his claims for money damages against state officials sued in their individual capacities, because state officials sued in their individual capacities are "persons" within the meaning of § 1983, s*ee Hafer*, 502 U.S. at 31, and the Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities, *id.* Additionally, the Eleventh Amendment does not generally bar prospective declaratory or injunctive relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985)

(explaining that "official-capacity actions for prospective relief are not treated as actions against the State"); *see also Edelman v. Jordan*, 415 U.S. 651, 677 (1974) (holding that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief."); *O'Callaghan v. Hon. X*, 661 F. App'x 179, 182 (3d Cir. 2016). Thus, while Johnson may receive prospective injunctive relief on an official capacity claim against state employees, he may not receive money damages on those claims. Accordingly, his official capacity claims, to the extent he seeks money damages, must be dismissed.

### B.     Claims Against Facilities Manager Clark and Deputy Superintendent of Centralized Services Miller

Johnson names SCI Chester Facilities Manager Clark and Deputy Superintendent of Centralized Services Miller as Defendants. The nature of the claims asserted against them is unclear. The only factual allegations describing any conduct engaged in by Clark relate to Johnson's grievances concerning his missing restricted meals and his receipt of contaminated food, as she allegedly provided responses to his appeals of these grievances. There are no factual allegations describing any conduct engaged in by Miller in the Complaint, but the Exhibits to the Complaint reflect that Miller, too, reviewed grievances submitted by Johnson. (*See*, *e.g.*, ECF 1-1 at 10, 23.) The Court thus understands Johnson's claims to arise either from Clark's and Miller's participation in the grievance process, or in their capacities as Facilities Manager and Deputy Superintendent of Centralized Services, respectively. Neither possibility states a plausible claim.

### 1.     Claims based on Participation in the Grievance Process

Claims based on the handling of prison grievances fail because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations predicated on

failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, [the plaintiff] cannot maintain a constitutional claim against [a prison official] based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Additionally, a prison official's mere involvement in the grievance process, without more, is not actionable under § 1983. *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of [the plaintiff's] prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants . . . —who participated only in the denial of [the plaintiff's] grievances—lacked the requisite personal involvement [in the conduct at issue].")  Accordingly, to the extent Johnson bases his claims against Clark and Miller on their roles in the grievance process, they will be dismissed with prejudice.

### 2.    Claims Based on Supervisory Role

Because Johnson fails to allege any conduct by Clark or Miller that may have contributed to the difficulty in being served his restricted diet or to his receipt of contaminated food, he may have named them as Defendants merely because, in light of their roles as Facilities Manager and

Deputy Superintendent of Centralized Services, Johnson believes that they are responsible for day-to-day operations of the prison, including the culinary department.  To the extent Johnson seeks to assert claims against Clark or Miller based on the conduct of another SCI Chester employee, he cannot do so, because liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga*, 806 at 227; *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*).  Rather, there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga.*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.*  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in

the subordinate's unconstitutional conduct." *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Johnson alleges that on several occasions, he was not provided with his restricted diet, and on other occasions, he was served contaminated food, both of which were in retaliation for filing grievances and complaining about missing meals.  (*See* Compl. at 11.)  Johnson has not alleged that either Clark or Miller personally participated in those incidents.  He also does not allege that Clark or Miller directed others to engage in conduct that violated his rights.  Additionally, Johnson has not alleged that either Clark or Miller maintained or failed to employ a specific policy or custom knowing that such conduct would likely result in a violation of Johnson's rights.  Johnson's claims against Clark and Miller are not plausible and must be dismissed.  Johnson will be granted leave to amend this claim.

### C.    Claims Against Reasons and Cotton-Williams

#### 1.    Eighth Amendment Conditions of Confinement Claims

Johnson asserts two distinct conditions of confinement claims, one based on the culinary department's failure on as many as twenty occasions over a period of 18 months to provide him with his restricted GERD diet, and another based on his receipt on three occasions of contaminated food.  For the following reasons, these claims will be served for a responsive pleading.

##### a.    Missed Restricted Diet Meals

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). A prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Unconstitutional punishment under the Eighth Amendment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference." (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000).

"However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347).

A prisoner must also establish that the defendants acted with deliberate indifference. *Farmer*, 511 U.S. at 835. A claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

Johnson alleges that on approximately 20 occasions over an 18-month period, Defendants Cotton-Williams and Reasons did not provide his approved restricted diet. (*See* Compl. at 4-5 (four days without diet in November 2021); *id*. at 6 (six days without diet in January 2022); *id* at 7 (12 days without diet in June 2023)). He alleges that both Cotton-Williams and Reason were aware that he required a restricted diet: Cotton-Williams, because she received calls from COs requesting the restricted meal on Johnson's behalf in November 2021; Reason, because he was provided with the diet at the latest on June 9, 2023. (*Id*. at 4, 8.) Johnson also alleges that he had not encountered any problems receiving his restricted meals beginning when he arrived at SCI Chester in March 2019 and was approved for the diet, until November 2021, suggesting that the culinary staff were aware of his needs in this regard for at least two years before Johnson encountered problems. (*Id*. at 4.) Johnson asserts that Cotton-Williams and Reasons were deliberately indifferent to his serious needs when they did not provide his restricted diet. (*Id*. at 23-24.)

The occasional deprivation of meals does not generally rise to the level of a constitutional violation. *See Davis v. Miron,* 502 F. App'x 569, 570 (6th Cir. 2012) (*per curiam*) (denial of seven meals over six days between 2008 and 2009 did not rise to the level of an Eighth Amendment violation); *Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) (*per curiam*) (concluding that "the alleged deprivation of three meals over two days [to a diabetic inmate] fails to rise to the level of constitutional violation"); *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (*per curiam*) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation"). However, where the deprivation is more serious, it can give rise to a plausible claim. *See, e.g.*, *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir.2009) (reversing summary judgment awarded to prison officials and finding that denial of 16 meals over 23 successive days was a sufficiently serious deprivation to state Eighth Amendment claim);*see also Talbert v. Dep't. of Corr*., 2023 WL 4873643, at *16-17 (E.D. Pa. July 31, 2023) (inmate stated plausible claim based on denial of dinner where inmate alleged resulting "starvation, dehydration, fatigue, and malnourishment" (citing *Reico v. Moran*, 633 F. App'x. 76, 78 (3d Cir. 2015) (single instance of deprivation will not suffice))); *Milton v. Clinton Cnty. Corr. Fac*., 2022 WL 2823562, at *6 (M.D. Pa. July 19, 2022) (denying motion to dismiss pretrial detainee's amended complaint where plaintiff alleged food service department was aware of his dietary restrictions yet served him inappropriate or insufficient meals on 32 occasions, causing him to go hungry or rely on commissary food, as there was no penological reason for the deprivation).

Johnson describes two periods during which he did not receive his restricted diet for between four and six days. (Compl. at 4-5, 6). These incidents likely would not rise to the level of a constitutional violation. However, he also describes an incident during which he did not receive his restricted diet for 12 consecutive days, despite an alleged reminder to the culinary department during this period that he was entitled to receive his restricted diet. (Compl. at 7-8.)

It is also material that the meal in question was prescribed for therapeutic reasons.  *See, e.g.*, *Kokinda v. Pennsylvania Dep't. of Corr.*, 2016 WL 5122033 at *7 (W.D. Pa. Sept. 6, 2016) (soy-intolerant inmate denied therapeutic diet stated Eighth Amendment claim at screening stage (citing *Jackson v. Gordon*, 145 F. App'x 774, 776 (3d Cir. 2005) (*per curiam*) (inmate stated Eighth Amendment claim where he alleged prison officials were aware he was lactose intolerant and allergic to eggs but denied him a therapeutic diet))).   Johnson also alleges, if in somewhat conclusory fashion, that Cotton-Williams and Reasons were aware that he was prescribed a restricted diet and ignored the consequences of withholding it, thereby acting with deliberate indifference.  (Compl. at 23-24.)  This claim will thus be served for a responsive pleading.

### b.      Contaminated Food

Johnson's claims based on three instances on which he was served contaminated food are insufficient to satisfy the objective component of an Eighth Amendment claim.  "[I]nmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being."  *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation."  *Id.* at 720 (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).

"[I]solated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional."  *Duran*, 923 F. Supp.2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell*.  So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . . ." (citing *Nickles v. Taylor*, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional incident involving spoiled food is insufficient to show that Plaintiff has been denied life's necessities."))).  Additionally, food tampering has been

found not to state a claim where no physical injury has been alleged. *See Rieco*, 633 F. App'x at 78 (no Eighth Amendment claim stated where inmate did not allege that he ate the contaminated food and suffered injury as a result); *DeJesus v. Carey*, 2016 WL 6134540, at *3 (M.D. Pa. Oct 20, 2016) (citing *Rieco* and finding no claim stated where plaintiff did not allege he suffered a physical injury where guard allegedly spit in his meal).

Johnson alleges that on three occasions over an 18-month period, he was served contaminated food. He alleges that on each occasion, he discovered the contaminant before eating the food and thus did not ingest it. He alleges that he sometimes went hungry and sometimes relied on commissary food when he felt he could not eat his restricted meals for fear of contamination, and that he suffered stress as a result of being served contaminated food (Compl. at 23-24), but he does not allege that he suffered any physical injury from ingesting contaminated food. Accordingly, he has not stated a plausible claim and this claim against Reason and Cotton-Williams will be dismissed. Johnson will be granted leave to amend this claim.

### 2.    First Amendment Retaliation Claims

Johnson alleges that he was served contaminated food after he requested that COs call the kitchen for his restricted diet when he did not receive it for four days in November 2021. (Compl. at 5.) He alleges that he was again served contaminated food a week after filing a grievance based on the culinary staff's failure over 12 days in June 2023 to provide his restricted diet. (*Id*. at 9.) He alleges that he was again served contaminated food in August 2023, around the time that he received a response to his appeal of a grievance, which indicated that culinary staff had been contacted about his grievance and reminded that he was entitled to a restricted diet. (*Id*. at 10.) Johnson asserts that he was served contaminated food in retaliation for complaining about his missing meals and for filing grievances related to missing meals. For the following reasons, this claim will be served for a responsive pleading.

Although a prisoner has no constitutional right to a grievance process, *see Gerholt,* 858 F. App'x at 34, a prisoner can state a claim based on retaliation for filing a grievance, *see Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (holding that a prisoner's filing of a grievance is constitutionally protected conduct).  In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn,* 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).  "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'"  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original).  "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions."  *Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("[The plaintiff's] allegation that he was falsely charged with misconduct in retaliation for filing complaints against [an officer] implicates conduct protected by the First Amendment.").  "[A] correctional officer denying food to an incarcerated individual is sufficient to support the 'adverse action' of a retaliation claim."  *Talbert*, 2023 WL 4873643, at *8 (citing *Newmones v. Ransom*, 2022 WL 4536296, at *5 (W.D. Pa. Sept. 28, 2022)).  The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation.  *See Watson*, 834 F.3d at 422.

Johnson asserts that the first instance of contaminated food occurred in retaliation for his complaining about missing restricted meals, and that the subsequent two instances were prompted

by his June 2023 grievance related to 12 missing restricted meals.  These allegations plausibly satisfy the first two elements of the claim.  The third element is less clear, because although Johnson's food was contaminated, the source of the contamination is unclear, and Johnson only alleges in conclusory fashion that Cotton-Williams and Reasons were responsible.  "Where a causal link cannot be shown with direct evidence [plaintiff] may try to satisfy his burden by showing '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link.'"  *Talbert*, 2023 WL 4873643, at *6-7 (quoting *McKinney v. Ryan*, 2022 WL 1308368, at *5 (D.N.J. May 2, 2022) (further citations omitted)).  Johnson has alleged both temporal proximity between his protected conduct and alleged retaliatory conduct, and an ongoing antagonistic pattern that includes missed meals and contaminated food.  However, he has not included any non-conclusory allegations supporting his clam that Reasons and Cotton-Williams were the ones responsible for contaminating his food.  Accordingly, this claim is not plausible and will be dismissed.  Johnson will be granted leave to amend this claim.

### D.     Rehabilitation Act Claims

Johnson references 28 U.S.C. § 794(b) in the introduction to his Complaint (Compl. at 1), and the Court understands him to be asserting a claim under the Rehabilitation Act based on several instances of the SCI Chester culinary staff's (1) failing  to provide Johnson with his restricted diet, and (2) serving him contaminated food. "[T]he [Rehabilitation Act] require[s] public entities, including state prisons, to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).  The proper defendant under a Rehabilitation Act claim is the public entity receiving federal assistance—here, the DOC.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients

of federal financial assistance, but not against individuals"). Therefore, as an initial matter, to the extent Johnson seeks to assert any individual capacity Rehabilitation Act claims against SCI Chester employees Clark, Cotton-Williams, Reasons, Miller, and Davis, or against the Secretary of the DOC Harry Laurel Harry, these claims must be dismissed with prejudice, because these Defendants are not public entities. *See A.W.*, 486 F.3d at 804.

To state a plausible claim under the Rehabilitation Act against the DOC, Johnson "must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." [11] *Furgess*, 933 F.3d at 288-89. To allege that he is a "qualified individual with a disability," Johnson must allege that he has a "disability," which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).[12] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A). With the passage of the Americans with Disabilities Act Amendments Act, Congress declared that "[t]he definition of disability shall be construed in favor of broad coverage

---

[11]     Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

[12]     Due to the "parallel definitions of disability" between the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, Courts use them interchangeably. *See e.g.*, *Marshall v. Sisters of Holy Fam. of Nazareth*, 399 F. Supp. 2d 597, 607 (E.D. Pa. 2005) (quoting *McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)).

of individuals under this Act, to the maximum extent permitted by the terms of this Act." Pub. L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555.  Additionally, that Act requires a "less searching analysis" of whether a plaintiff is "substantially limited." *Kravits v. Shinseki*, 2012 WL 604169, at *7 (W.D. Pa. Feb. 24, 2012).

As pled, Johnson's Rehabilitation Act claim is not plausible.  First, Johnson does not allege that he is a qualified individual with a disability.  While Johnson alleges that he suffers from GERD, for which he has been prescribed a restricted diet, (*see* Compl. at 4), the specific nature of any related disability is unclear, as Johnson does not include factual allegations in his Complaint describing any such disability or its limitations on his major life activities.  More significantly, however, even if Johnson was deemed disabled for purposes of his Rehabilitation Act claim, he does not allege that he was discriminated against because of a disability or denied accommodations for a disability with respect to any programs, services, or activities at SCI Chester.  Rather, to the extent that allegedly failing to provide Johnson with his restricted diet or serving him contaminated food can be construed as a denial of an accommodation or an exclusion from a service or program, Johnson clearly alleges that the motive for this conduct was retaliation for his complaints about the food service at SCI Chester, not disability discrimination.  As a result, his claim is not plausible as pled.

Johnson's Rehabilitation Act claims against the named individual Defendants will be dismissed with prejudice.  Johnson will be granted leave to amend this claim.

### E.    State Law Claims

Johnson asserts state law claims for negligence, recklessness,[13] and intentional infliction of emotional distress.  (Compl. at 2, 24.)  However, the doctrine of sovereign immunity bars claims

---

[13]    Recklessness is a state of mind, not an independent cause of action.  *See Monroe v. CBH20, LP*, 286 A.3d 785, 799 (Pa. Super. Ct. 2022) (citing *Archibald v. Kemble*, 971 A.2d 513, 519 (Pa.

for damages against the Commonwealth and its officials and employees acting within the scope of their duties.  1 Pa. Stat. and Const. Stat. § 2310. There are ten instances in which sovereign immunity has been waived by statute.  These are negligent acts pertaining to: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) certain sexual abuse offenses. 42 Pa. Stat and Const. Stat. § 8522(b)(1)-(10).  These exceptions must be "strictly construed and narrowly interpreted." *Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003). "Commonwealth employee[s] [are] protected by sovereign immunity from the imposition of liability for intentional tort claims." *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992); *see also Morris v. Pennsylvania Dept. of Corrections,* 2023 WL 2575081, at *8–9 (W.D. Pa. Jan. 5, 2023) (dismissing inmate's state law negligence and intentional infliction of emotional distress claims on statutory screening for failure to state a claim), *report and recommendation adopted*, 2023 WL 2574107 (W.D. Pa. Mar. 20, 2023).

There is nothing in Johnson's Complaint to suggest that the Defendants' alleged conduct was performed outside the scope of their duties as employees of the Commonwealth.  To the contrary, it is apparent from the factual allegations in the Complaint that Defendants were acting within the scope of their employment as prison officials when they allegedly committed the acts of which Johnson complains.  There also is nothing in the Complaint that would support the conclusion that Plaintiff's state tort law claims fall within the above ten exceptions to sovereign immunity.

---

Super. Ct. 2009) (recklessness claim was subsumed within the negligence clam included in the complaint)).

Moreover, Johnson's claims are wholly undeveloped and conclusory.  To state a claim of negligence under Pennsylvania law, a plaintiff must allege:  "(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another." *Vasquez v. Wingard*, 847 F. App'x 108, 111 (3d Cir. 2021) (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993)).  The elements of a claim for intentional infliction of emotional distress under Pennsylvania law are:  "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Madreperla v. Williard Co.,* 606 F. Supp. 874, 879-80 (E.D. Pa. 1985) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).  "Extreme and outrageous conduct constitutes behavior 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized community." *Armstrong v. Gretsky*, 2023 WL 2903977, at *9 (E.D. Pa. Apr. 11, 2023) (quoting *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021) (further citations omitted)).  "Pennsylvania courts also require a plaintiff asserting a claim for intentional infliction of emotional distress to provide evidence of a physical injury caused by the defendant's conduct." *Armstrong*, 2023 WL 2903977, at *9 (quoting *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014)).

Other than referencing these torts, Johnson does not flesh out his claims.  In support of these claims, Johnson asserts only that "[t]he defendants had a duty to perform and failed to perform it, thereby causing plaintiffs [*sic*] injury."  (Compl. at 24.)  This does not suffice to state plausible claims, and these claims will be dismissed.  Johnson will be granted leave to amend these claims.

## IV.      CONCLUSION

For the reasons stated, the Court will sever, on the one hand, Johnson's claims against the DOC and SCI Chester employees based on allegations related to Johnson's restricted GERD diet from, on the other hand, his claims against SCI Camp Hill employees based on the alleged confiscation of Johnson's legal papers.  The SCI Camp Hill claims will be transferred to the United States District Court for the Middle District of Pennsylvania.  Upon screening the SCI Chester claims, the following will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii): claims for money damages based on the Pennsylvania Constitution; claims based on the outcome of Johnson's grievances; Rehabilitation Act claims asserted against the individual Defendants; and Johnson's official capacity claims and claims against the DOC seeking money damages. The Court will dismiss without prejudice Johnson's conditions of confinement claims based on being served contaminated food, his retaliation claims, any supervisory liability claims he seeks to pursue against Defendants Clark and Miller, his claims against Secretary Harry, and his Rehabilitation Act claim against the DOC.  The Court is prepared to serve Johnson's conditions of confinement claim based on non-delivery of his restricted diet against Defendants Cotton-Williams and Reasons.  Johnson will be afforded the option of proceeding with those claims only or filing an amended complaint.   Johnson's Motion to Move Forward will be denied as moot.  An appropriate order follows, which shall be docketed separately.