IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAHEEM JOHNSON, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4738 |
| | : | |
| GINA CLARK, *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM OPINION

**SCHMEHL, J.** /s/ JLS                                                                                                                                        **OCTOBER 28, 2024**

Presently before the Court is an Amended Complaint ("AC") filed by *pro se* Plaintiff Raheem Johnson, a convicted prisoner currently incarcerated at SCI Chester. The AC, filed pursuant to 42 U.S.C. § 1983, asserts violations of Johnson's constitutional rights against the following SCI Chester employees: Facility Manager/Superintendent Gina Clark, "CFSM,"[1] M. Reasons, and Kitchen Supervisor Cotton-Williams. AC at 2-3, ECF No. 9. For the following reasons, the Court will dismiss with prejudice Johnson's conditions-of-confinement claims against Cotton-Williams and Reasons based on being served contaminated food. The Court will also dismiss with prejudice Johnson's claims against Clark. Johnson's conditions-of-confinement claims against Cotton-Williams and Reasons based on non-delivery of his special-diet meals and his retaliation claims against these Defendants will be served for a responsive pleading.

---

[1]     The Court understands this acronym to stand for "Corrections Food Service Manager."

I.      **PROCEDURAL POSTURE AND FACTUAL ALLEGATIONS**[2]

In his original Complaint,[3] Johnson asserted claims against the Pennsylvania Department of Corrections ("DOC"); Secretary of the DOC Laurel Harry; and SCI Chester employees Gina Clark; Cotton-Williams; Reasons, and Deputy Superintendent of Centralized Services Keith Miller. *Johnson v. Clark*, No. 23-4738, 2024 WL 2331715, at *1. (E.D. Pa. May 22, 2024). The gravamen of his complaint was that he had been denied his medically ordered diet and served contaminated food in retaliation for grievances filed complaining about the kitchen staff. *Id*. at *2-3. Upon statutory screening, the Court dismissed with prejudice Johnson's claims for money damages arising under the Pennsylvania Constitution, his claims based on the outcome of his grievances, his Rehabilitation Act claims asserted against the individual Defendants, and his official capacity claims and claims against the DOC seeking money damages. *Id*. The Court dismissed without prejudice Johnson's conditions-of-confinement claims based on being served contaminated food, his retaliation claims, any supervisory-liability claims he sought to pursue against Defendants Clark and Miller, his claims against Secretary Harry,[4] and his Rehabilitation Act claim against the DOC. The Court was prepared to serve Johnson's conditions-of-confinement

---

[2]    The factual allegations set forth in this Memorandum are taken from Johnson's AC, ECF No. 9. The Court adopts the pagination supplied by the CM/ECF docketing system.

[3]    Johnson's original Complaint also included claims against SCI Camp Hill employees Correctional Officer Boose, Captain Baptiste, and Grievance Coordinator Heist, and SCI Chester Mailroom Supervisor Tameka Davis arising from the alleged confiscation of Johnson's legal papers while he was temporarily incarcerated at SCI Camp Hill. *See Johnson*, 2024 WL 2331715, at *1, *3. Upon statutory screening, the Court severed those claims from the original Complaint, and transferred them to the United States District Court for the Middle District of Pennsylvania. *Id.* at *4.

[4]    There were no factual allegations in the Complaint describing any conduct engaged in by Harry, and the Court thus dismissed any claim against her as not plausible. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.)

2

claim based on the alleged non-delivery of his special-diet meals against Defendants Cotton-Williams and Reasons, but afforded Johnson the option of proceeding with those claims only or filing an amended complaint. He has filed an amended complaint, which is ripe for screening.

In his AC, Johnson alleges that in late 2021, for over a six-day period, he did not receive twelve approved special diet meals.[5] *Id.* at 9. He alleges that even after a correctional officer called the kitchen to complain on his behalf, kitchen employees Cotton-Williams and Reasons did not provide his special diet for an additional four days, leaving Johnson to eat commissary food, which he alleges increases his blood pressure. *Id*. In January 2022, when CO Plumer called again to complain about the non-delivery of the special-diet meal, Cotton-Williams arranged for its delivery. Johnson alleges the meal was contaminated with chewing gum. *Id*. He asserts that the gum was placed in his meal in retaliation for grievances filed based on the earlier failure to deliver his special diet, that Cotton-Williams was aware of the grievances, and that she was the only kitchen staff contacted to provide the January 2022 meal. *Id*. He also alleges that she arranged for her husband to deliver the meal, and that the contaminated meal was delivered within ten minutes of CO Plumer calling the kitchen. *Id*. at 9-11.

Johnson alleges that Cotton-Williams and Reasons continued to refuse to deliver his special diet even after he produced his diet card, and the medical department contacted them to ensure delivery of the special diet. *Id*. at 9. Johnson alleges that his special diet was not delivered between June 1, 2023, through June 12, 2023, though Reasons allegedly conceded that he was advised by June 9, 2023, that Johnson was entitled to the special diet. *Id*. Johnson estimates that he was denied his medically ordered diet on at least 40 occasions over an 18-month period, and that this

---

[5] The special diet was allegedly prescribed to treat "Reflux Disease," which the Court understands to refer to Gastroesophageal Reflux Disease ("GERD"). AC at 21, ECF No. 9.

denial left him hungry and with no other option but to eat commissary food, which elevated his blood pressure. *Id*. at 11.

Johnson alleges that his meal was again contaminated on June 19, 2023, seven days after Johnson filed a grievance based on Cotton-Williams's and Reasons's refusal to deliver his special diet earlier that month. *Id*. at 11. He alleges that they contaminated his food when, after a half-hour of conversation, he refused to drop the grievances he had filed complaining of their conduct. *Id*. Johnson alleges that had he agreed to drop his grievances, Reasons would have ensured that Johnson's food was not contaminated. *Id*. at 11-13. He also alleges that Cotton-Williams and Reasons were the only kitchen employees contacted about non-delivery of his special diet, and the only ones named in his grievances. *Id*. at 13. He also alleges that it was their duty to count and sign off on meals delivered to prisoners and posits that they must have either contaminated his meals themselves or permitted someone else to do so. *Id*. at 13-15.

With respect to his claims against Clark, Johnson alleges that she was aware of Cotton-Williams's and Reasons' failure to provide Johnson with his special diet because he and Clark allegedly spoke about the issue on several occasions. *Id*. at 17. Notwithstanding her knowledge that Johnson was not receiving his medically approved diet regularly, and that he had received more than one contaminated meal, Clark allegedly did not attempt to resolve the situation. *Id*. Johnson identifies and includes with his AC a letter from Clark advising him that she is aware of his grievances and suggesting that he continue to file grievances to address issues pertaining to his meals. *Id*. at 5, 17. Her letter also states, "As far as I have been told your tray has been properly made and delivered. Is this not accurate?" *Id*. at 5. Johnson asserts that Clark's awareness of the circumstances from conversations held outside of the grievance process and her failure to stop Cotton-Williams's and Reasons' conduct amount to acquiescence in their conduct. *Id*. at 17.

Johnson alleges that as a result of the denial of his special diet and his receipt of contaminated food he has experienced hunger, pain, stress, reflux, and depression. *Id*. at 7. He asserts claims for violations of his First, Eighth, and Fourteenth Amendment rights. *Id*. at 3. He seeks money damages. *Id*. at 7.

## II.     STANDARD OF REVIEW

Although Johnson has paid the filing fee in full, the Court has the authority to screen his AC pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d

Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, ___ F. 4d ___, 2024 WL 3820969 (3d Cir. Aug. 15, 2024). Conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As Johnson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

Johnson asserts claims for violation of his First, Eighth, and Fourteenth Amendment rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode*, 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution").

### A. Claims Based on Alleged Non-Delivery of GERD Diet

Upon statutory screening of the initial complaint, the Court determined that Johnson had plausibly asserted conditions-of-confinement claims against Cotton-Williams and Reasons based on the non-delivery of his GERD diet. *Johnson*, 2024 WL 2331715, at * 8-*10. Johnson has adequately repeated the allegations included in the original complaint describing the conduct allegedly engaged in by Cotton-Williams and Reasons with respect to the non-delivery of his GERD diet and these claims will be served for a responsive pleading.

### B. Claims Based on Allegedly Contaminated Food

#### 1. Retaliation Claims

Johnson again asserts retaliation claims against Cotton-Williams and Reasons based on his receipt on three occasions of contaminated food. Johnson contends that he was served the contaminated meals by Cotton-Williams and Reasons because he filed grievances when he did not receive his special-diet meals. AC at 11-13, ECF No. 9. The Court previously described the required elements of a prisoner's retaliation claim. *Johnson*, 2024 WL 2331715, at *10. The Court determined that Johnson had plausibly alleged the first two elements of a retaliation claim: that he had engaged in constitutionally protected conduct when he filed grievances and had suffered an adverse action. *Id*. However, the third element—that Johnson's filing of grievances was a substantial or motivating factor for the adverse action—was not plausibly alleged, because the source of the contamination was unclear from the allegations in the complaint. *Id*. The Court thus dismissed the claim without prejudice. *Id*.

In his AC, Johnson repeats that Cotton-Williams and Reasons served him contaminated food in retaliation for his filing of grievances based on non-delivery of his special diet. AC at 11,

7

ECF No. 9. He alleges that the first incident occurred within ten minutes of CO Plumer speaking with Cotton-Williams about the kitchen's failure to deliver Johnson's special diet, and that the meal was delivered by Cotton-Williams's husband. *Id*. at 9-11. Johnson also adds new allegations. He alleges that Cotton-Williams and Reasons were contacted by Deputy Miller after Johnson filed grievances, and Johnson spent a half-hour in conversation with an unidentified individual who sought to convince him to drop his grievances. *Id*. He alleges that he refused to do so, but that had he agreed, Reasons would have made sure that his meals were not contaminated. *Id*. at 11-13. Instead, he received another contaminated meal. *Id*. He also alleges that Cotton-Williams and Reasons were the only kitchen employees contacted about Johnson's meals and were the only kitchen employees identified in his grievances. *Id*. at 13. Finally, he alleges that Cotton-Williams and Reasons were responsible for counting and signing off on meals, and that once they learned that he had received a contaminated meal, they were on notice to prevent another similar incident from occurring. Because Johnson was served contaminated food on two later occasions, he claims that wither Cotton-Williams and Reasons were responsible for the contamination themselves or were responsible for not preventing it. *Id*. at 13-15.

The allegations in the AC plausibly satisfy the first two elements of a First Amendment retaliation claim. Again, however, the third element is less clear, even with the additional allegations. Johnson's allegations that only Cotton-Williams and Reasons were contacted about the non-delivery of his special diet meals, and that they were the only kitchen staff named in his grievances suggest that these Defendants might have more motive to retaliate against Johnson, but do not preclude another source of contamination. Additionally, Johnson's allegation that had he agreed to drop his grievances, Reasons would have made sure his food was not contaminated is pure conjecture, because Johnson does not describe how he knows this to be true. As the Court

8

previously noted, "[w]here a causal link cannot be shown with direct evidence [plaintiff] may try to satisfy his burden by showing '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link.'" *Talbert v. Dep't of Corr.*, No. 23-2255, 2023 WL 4873643, at *6-7 (E.D. Pa. July 31, 2023) (quoting *McKinney v. Ryan*, 2022 WL 1308368, at *5 (D.N.J. May 2, 2022) (further citations omitted)). Johnson has alleged both temporal proximity between his protected conduct and alleged retaliatory conduct, and an ongoing antagonistic pattern that includes missed meals and contaminated food. Accordingly, Johnson has barely nudged his retaliation claim "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680 (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 545 (2007))). This claim will be served for a responsive pleading.

### 2. Conditions of Confinement Claim

Separate from his plausible conditions-of-confinement claim based on non-delivery of his GERD diet, Johnson again asserts conditions-of-confinement claims against Cotton-Williams and Reasons based on his receipt of contaminated food. AC at 11-15, ECF No. 9. The Court previously described the required elements of a conditions of confinement claim based on a prisoner's receipt of contaminated food. *Johnson*, 2024 WL 2331715, at *10. The Court dismissed the claim because Johnson alleged only three instances of food contamination over an 18-month period, did not allege that he ingested the contaminated food, and did not allege that he suffered any physical injury from ingesting contaminated food. *Id*. The factual allegations included in the AC about Johnson's receipt of contaminated food are the same as those included in the original Complaint. He does not allege that he ingested any contaminated food and does not allege that he suffered any physical injury as a result of ingesting contaminated food. Accordingly, this claim is not plausible

and will be dismissed with prejudice. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").

### C. Claims Against Clark

Johnson asserts a supervisory liability claim against Defendant Clark because she was allegedly aware that Cotton-Williams and Reasons were not delivering Johnson's special-diet meals to him and were allegedly providing Johnson with contaminated food in retaliation for Johnson's filing of grievances and, despite her awareness, allowed this conduct to continue. AC at 4, 17-19, ECF No. 9. The Court previously described the elements of a claim based on a defendant's role as a supervisor. *Johnson*, 2024 WL 2331715, at *7-*8. The Court dismissed any supervisory liability claim Johnson sought to assert because he did not allege that Defendant Clark maintained a policy, practice or custom that caused the alleged constitutional harm, that they personally participated in the non-delivery of Johnson's special diet meals or the delivery of contaminated food, or that they directed others to do so.[6] *Id*. at *8. The Court also noted that a supervisor's mere participation in the prison grievance process was not actionable and did not constitute personal involvement in the conduct complained of. *Id*. at *6.

In his AC, Johnson alleges that Clark was aware of the kitchen staff's failure to deliver his special diet meals as a result of personal conversations she had with him. AC at 4, 17. He alleges that she instructed him to write her a letter and she would investigate. *Id*. at 17. He further alleges that she responded to the letter and instructed him to continue to file grievances about the matter. *Id*. Additionally, she remarked in the letter that she had been told that his tray had been properly

---

[6] Johnson did not reassert clams against Keith Miller in his AC.

10


prepared and delivered.[7]  *Id*.  Johnson asserts that Clark's failure to ensure that he was served his special-diet meals regularly and was not served contaminated food amounted to acquiescence to the allegedly unconstitutional conduct engaged in by Cotton-Williams and Reasons.  *Id*. at 17.

To set forth a claim for supervisory liability under § 1983, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr..*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).  "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury."  *Id.*  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held

---

[7]  It is not clear from the AC when the conversations between Johnson and Clark occurred, or when the letter was written, and Johnson does not allege that the kitchen staff continued to fail to deliver his special meals, or again served him contaminated food after Clark said she would investigate the matter.

11

liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Johnson alleges that on several occasions, he was not provided with his special diet, and on other occasions he was served contaminated food, in retaliation for filing grievances and complaining about missing meals. He alleges that Clark was aware of these incidents but does not allege that she personally participated in them. He also does not allege that Clark directed Cotton-Williams or Reasons to engage in the conduct that allegedly violated his rights. Additionally, Johnson has not alleged that Clark maintained or failed to employ a specific policy or custom knowing that such conduct would likely result in a violation of Johnson's rights. His conclusory assertion that Clark was aware of an acquiesced in the alleged constitutional violations is conclusory and does not suffice to state a plausible claim. *Iqbal*, 556 U.S. at 678. Johnson's claims against Clark do not meet the legal standards and will be dismissed with prejudice. *Jones*, 944 F.3d at 483.

### IV.  CONCLUSION

For the foregoing reasons, the Court will dismiss with prejudice Johnson's conditions of confinement claims against Cotton-Williams and Reasons based on being served contaminated food. The Court will also dismiss with prejudice Johnson's claims against Clark. Johnson's conditions-of-confinement claims against Cotton-Williams and Reasons based on non-delivery of his special-diet and his retaliation claims against these Defendants will be served for a responsive pleading. An appropriate Order follows, which shall be docketed separately.